O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO ALVAREZ | Case No. CV 09-1543 AN |
|       Plaintiff, | ORDER REVERSING AND |
|       v. | REMANDING  DECISION OF COMMISSIONER |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
|       Defendant. | |

Both parties have consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, the parties have filed the Joint Stipulation ("JS") and seek a dispositive order regarding the disputed issues set forth in the JS.  The Court's decision is based upon the pleadings, the Administrative Record ("AR"), and the JS.  The Court now rules as follows with respect to the two disputed issues that Plaintiff raised in the JS.

**Issue #1**

Plaintiff contends reversal is warranted because, with respect to his visual impairments, the Administrative Law Judge ("ALJ") failed to give proper reasons for disregarding the opinions of his treating physicians.  (JS 4, 7.)

The Court's review of the AR establishes the following parts of the record are relevant to the Court's ruling on this issue.

1    On June 28, 2005, consultative examiner, Sahniah Siciarz-Lambert, M.D., assessed
2    Plaintiff to have corrected vision of 20/200 in his right eye, 20/50 in his left eye, and was
3    "not restricted in terms of . . . seeing."  (AR 189, 192.)

4    On August 25, 2005, non-examining state agency physician, L. Chaing-Chien,
5    M.D., provided opinions as to Plaintiff's exertional and non-exertional limitations.  (AR
6    194-203.)  Dr. Chaing-Chien did not find any limitations related to Plaintiff's visual
7    limitations but did opine that Plaintiff "should have better visual acuity with better
8    correction."  (AR 202.)

9    About four months later, on December 22, 2005, Plaintiff received treatment from
10   the Los Angeles County Department of Health Services ("LACDHS").  (AR 216.)
11   Plaintiff was examined by Lucrecia Escobar, O.D., who found Plaintiff's vision with his
12   existing prescription lenses was 20/200 in his right eye, and 20/100 in his left eye.  (AR
13   216.)  Plaintiff's vision with new prescription lenses was 20/150 in the right, and 20/100
14   in the left. (AR 216.)[1]  On February 22, 2006, his vision with his prescription in use was
15   20/400 in the right, and 20/100 in the left.  (AR 210.)  His vision with new prescription
16   lenses was 20/200 in the right, and 20/80 in the left.  (AR 210.)[2]

17   The record contains additional LACDHS treatment notes that were not provided
18   to the ALJ before he issued his decision on January 7, 2008.  These notes show that, on
19   August 2, 2007, Plaintiff's vision was assessed as "5 ft/200" in the right eye and 20/400
20   in the left eye.  (AR 381.)  On February 20, 2008, his vision was assessed as 20/400 in
21   the right, and the space provided for left eye states, "HM."[3]  (AR 390.)  The provider also
22   noted, "disability for 3 [months] legally blind now."  (AR 390.)   On March 27, 2008,

23
24   [1]    Both parties misstate the 12/22/05 LACDHS assessment of Plaintiff's corrected
     vision.  (JS 5, 9.)

25   [2]    Plaintiff incorrectly alleges the LACDHS assessed him as blind in his left eye.  (JS
26   5.)  However, the notation in the LACDHS report that Plaintiff refers to states Plaintiff's
     uncorrected vision in his right eye was "blurred."  (AR 210.)

27   [3]    The Commissioner asserts that "HM" is an abbreviation for "manifest hyperopia"
28   or manifest farsightedness.  (AR 10 n. 7.)  Plaintiff does not dispute the Commissioner's
     interpretation of this notation in his reply contentions.

1    Plaintiff's vision was assessed as 20/200 in the right eye and and "HM" in the left.  (AR
2    394.)  On July 3, 2008, his vision was found to be 20/400 in the right eye and "HM" in
3    the left.  (AR 427.)  None of the foregoing treatment notes indicate whether the
4    assessments are for Plaintiff's corrected or uncorrected vision.  (AR 381, 390, 394, 427.)

5        At his April 17, 2007, administrative hearing, Plaintiff testified that he stopped
6    working in 2005 because of fatigue, pain in his kidney area, numbness in his hands and
7    his inability to see well.  (AR 71, 81, 84.)  He also stated that he had pain in his right eye
8    and could not watch television because he could not see well.  (AR 79.)

9        During the hearing, Plaintiff's counsel asked the vocational expert if a person who
10   had "significant visual limitations in that they are essentially blind in one eye, and that
11   the best vision in the second eye is 20/80[,]" could perform Plaintiff's past job as a travel
12   agent helper.  (AR 98-99.)  The vocational expert responded that the job required near
13   vision but that he did not have the expertise to determine what 20/80 vision meant.  (AR
14   99.)  The ALJ then asked if a person who could not see print "under" 10-point could
15   perform the job and the vocational expert responded that such a person could not perform
16   the job.  (AR 99-100.)  Neither counsel nor the ALJ asked whether this visual limitation
17   would prevent a person from performing other work.

18       In his January 7, 2008 decision, the ALJ found, *inter alia*, that Plaintiff suffered
19   from retinopathy and cataracts.  (AR 49.)  In making these findings, he cited but did not
20   otherwise discuss the 12/22/05 treatment notes from LACDHS.[4]  (AR 49, 215-16.)  The
21   ALJ found Plaintiff could lift and carry 50 pounds occasionally and 25 pounds
22   frequently, and sit, stand and walk up to 6 hours in an 8-hour day.  (AR 50.)  The ALJ did
23   not find Plaintiff's visual impairments caused any limitation to his ability to perform
24   work-related activities.  (AR 50-52.)  In making these findings, the ALJ's decision shows
25   that he adopted and relied upon Dr. Chaing-Chien's aforementioned 8/25/05 opinions,
26   which Dr. Chaing-Chien provided before the conflicting opinions expressed by Plaintiff's

27
28   [4]   As noted above, those notes assessed Plaintiff's corrected vision to be 20/150 in
     the right eye and 20/100 in the left.  (AR 215-16.)

Page 3

treating physicians at LACDHS, and was over two years old by the time the ALJ issued his decision on January 7, 2008. (AR 54, 201, 203.) Further, even though the opinions about Plaintiff's visual impairments that were expressed by Plaintiff's LACDHS treating physicians conflicted with Dr. Chaing-Chien's opinion about Plaintiff's vision, the ALJ did not even mention the treating physician's opinions, let alone explain why he felt Dr. Chain-Chien's conclusory opinion was more credible. (AR 50-52.)

In order to reject a treating physician's opinion that is contradicted by the opinion expressed by another physician, the Commissioner must provide "specific and legitimate reasons" for doing so that are supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (*quoting Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)). The opinion of a non-examining physician, by itself, does not constitute substantial evidence justifying rejection of the opinion of either a treating or examining physician. *Lester*, 81 F.3d at 831.

Based upon the foregoing, the Court finds a reversal of the Commissioner's final decision is warranted because, with respect to Plaintiff's visual impairments, the ALJ did not provide specific and legitimate reasons for favoring Dr. Chaing-Chien's 8/25/05 opinion over the subsequent, conflicting opinions expressed by Plaintiff's treating physicians. (AR 49.) The ALJ also failed to make any specific finding as to what Plaintiff's corrected vision was or whether Plaintiff's visual impairments caused any limitation to his near vision or otherwise limited ability to perform work-related activities. The ALJ also failed to discuss the visual opinion of the examining physician (Dr. Siciarz-Lambert). (AR 189.)

## **Issue #2**

Under the heading for Issue #2, Plaintiff does not present a separate ground for reversal. Instead, he merely contends that, "[o]n remand, the court should direct the ALJ to evaluate all of the new and material evidence submitted to the Appeals Council" and reevaluate his subjective symptom testimony. (JS 14.) The Court agrees. On remand, the Commissioner and/or ALJ shall consider all relevant evidence and make all necessary

1  findings in light of the evidence.

2  <u>**Conclusion**</u>

3       The decision whether to remand for further proceedings or order an immediate

4  award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d

5  1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further

6  administrative proceedings, or where the record has been fully developed, it is

7  appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at

8  1179 ("the decision of whether to remand for further proceedings turns upon the likely

9  utility of such proceedings"). However, where there are outstanding issues that must be

10  resolved before a determination of disability can be made, and it is not clear from the

11  record that the ALJ would be required to find the claimant disabled if all the evidence

12  were properly evaluated, remand is appropriate. *Id.*

13       The Court finds a remand is appropriate because there are unresolved issues that,

14  when properly resolved, may ultimately still lead to a not disabled finding. Accordingly,

15  the present case is remanded for further proceedings during which the Commissioner

16  and/or the ALJ shall:

17       (a) properly evaluate the opinions of Plaintiff's treating medical provider,

18  LACDHS, regarding his visual impairments and limitations, and provide reasons for

19  accepting or rejecting them; (b) reevaluate Plaintiff's residual functional capacity,

20  including Plaintiff's visual limitations;[5/] (c) reevaluate whether Plaintiff is able to perform

21  work in light of any and all new findings; and (d) make any and all other new findings

22  as needed.

23  ///

24  ///

25

26

27  [5/]    The Court notes a proper evaluation of Plaintiff's RFC may require testimony from

28  a medical expert to aid in determining whether Plaintiff's visual impairments cause any
limitations to his near vision or other abilities to perform work-related activities.

1        IT IS THEREFORE ORDERED that a judgment be entered reversing the

2   Commissioner's final decision and remanding this matter for further proceedings

3   consistent with this Order pursuant to Sentence Four of 42 U.S.C. §405(g).

4

5

6

7   DATED:     December 21, 2009    _____

8                                   ARTHUR NAKAZATO
                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28